FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ SEP 09 2019 ★

BROOKLYN OFFICE

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street
New York, New York 10019
Tel.: (212) 513-3200
Fax: (212) 385-9010
*Counsel for Non-Party Brendan J. Sullivan*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and

W&K INFO DEFENSE RESEARCH, LLC
    *Plaintiffs,*

v.

CRAIG WRIGHT
    *Defendant*

Case No. MISC 19-2303

DeARCY HALL, J.

Main Action Pending in the
United States District Court for the
Southern District of Florida
Case No. 9:18-cv-80176-BB

### MEMORANDUM OF LAW IN SUPPORT OF
### NON-PARTY BRENDAN J. SULLIVAN'S
### MOTION TO QUASH SUBPOENA

Non-party and journalist Brendan J. Sullivan, by undersigned counsel and pursuant to Federal Rules of Civil Procedure 45(d)(3), respectfully requests the issuance of an order quashing a subpoena *ad testificandum* and *duces tecum* to testify at a deposition and produce documents, which seeks testimony and unpublished documents that are protected from compelled disclosure by the privileges granted journalists to protect their newsgathering information and materials. These protections are specifically intended to guard against the unfettered access that Plaintiffs Ira Kleiman, as the personal representative of the Estate of David Kleiman and W&K Info Defense Research, LLC. ("Plaintiffs") seek in order to sift through non-published information in an attempt

to find something, yet unidentified, to assist their case. For the following reasons, Brendan Sullivan's motion should be granted and the subpoena should be quashed in its entirety.

## BACKGROUND

Brendan Sullivan is a journalist based in New York whose reporting has focused on technology and cryptocurrency. *See* Sullivan Decl. at ¶ 2. His work has been published in a number of outlets, including Esquire, Vice, Interview and Modern Consensus, an online news site whose mission is to cover the technology, people, and culture of the cryptocurrency and blockchain world. *Id.* In this capacity, Mr. Sullivan has covered the pending litigation initiated by Ira Kleiman, as the personal representative of the Estate of David Kleiman, along with W&K Info Defense Research, LLC, against Craig Wright. *Id.*

On August 26, 2019, Mr. Sullivan published an article on Modern Consensus titled "First interview with Craig Wright after judge orders him to pay $5 billion in bitcoin" (the "Article"). *Id.* at ¶ 3. The article contains Craig Wright's reaction to the Southern District of Florida court's decision ordering him to pay $5 billion in bitcoin and his statements regarding his bitcoin ownership.

The next day, Plaintiffs served Mr. Sullivan with a subpoena that commands the appearance of Mr. Sullivan for a deposition on September 10, 2019, and calls for a broad production of documents from Mr. Sullivan, including:

1) Copies of emails, communications, and documents between Mr. Sullivan and Craig Wright;

2) Copies of recordings, notes, or other records made of any interview or meeting with Craig Wright;

3) All drafts of Mr. Sullivan's Article; and

4) All communications and documents related to the publication of and interview resulting in the Article.

2

*See* Sullivan Decl. at ¶ 5. The specific scope of the testimony to be elicited in the deposition is not set forth in the subpoena.[1]

## ARGUMENT

### I. THE SUBPOENA SEEKS TO COMPEL TESTIMONY IN VIOLATION OF THE FIRST AMENDMENT AND OTHER FEDERAL AND STATE LAWS.

Fed. R. Civ. P. 45(c)(3)(A) provides that "on timely motion, the court for the district where compliance is required must quash or modify a subpoena that…requires disclosure of privileged or other protected matter, if no exception or waiver applies."

#### A. Journalistic Materials Are Protected Against Compelled Disclosure.

The documents and testimony sought are privileged under the First Amendment, which preserves the news media's unfettered right to gather the news and control its own editorial decisions, free from civil litigants' fishing expeditions into the unpublished files of a news organization. Indeed, the United States Supreme Court has expressly recognized that the editorial and newsgathering processes of the media are protected by the First Amendment because "without some protection for seeking out the news, freedom of the press could be eviscerated." *Branzburg v. Hayes*, 408 U.S. 665, 691 (1972); *Herbert v. Lando*, 441 U.S. 153, 174 (1979) ("There is no law that subjects the editorial process to private or official examination merely to satisfy curiosity or to serve some general end such as the public interest; and if there were, it would not survive constitutional scrutiny as the First Amendment is presently construed.").

The Second Circuit has consistently recognized that "the pivotal function of reporters to collect information for public dissemination" and "the paramount public interest in the

---

[1] On September 5, 2019, counsel for Mr. Sullivan sent a letter objecting to the subpoena in its entirety. Counsel for Mr. Sullivan and Plaintiffs conferred to determine whether the issue could be resolved without the Court's intervention. No resolution was reached.

3

maintenance of a vigorous, aggressive and independent press capable of participating in robust, unfettered debate over controversial matters" require protection of the ability of the press to freely collect, edit, and publish news, unhampered by subpoenas seeking their newsgathering materials:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties . . . . Incentives would also arise for press entities to clean out files containing potentially valuable information . . . . And permitting litigants unrestricted, court-enforced access to journalistic sources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Gonzales v. NBC, Inc.*, 194 F.3d 29, 35 (2d Cir. 1999). *See also Lonegan v. Hasty*, No. CV04-2743(NG)(VVP), 2008 WL 41445, at *2 (E.D.N.Y. 2008) ("[R]eady access by litigants to reporters and their resource materials intrudes on newsgathering and editorial processes, and thus interferes with the free low [sic] of information to the public."); *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 477 (S.D.N.Y. 2016) ("The Privilege therefore protects 'the independence of the press and the need to allow the press to publish freely on topics of public interest without harassment and scrutiny by litigants seeking to conduct 'fishing expeditions' into [unpublished] materials in the hope that some relevant information may turn up.'").[2]

Although the federal privilege against compelled disclosure of newsgathering information is qualified, "*Gonzales* makes clear that requiring the press to surrender materials gathered in the

---

[2] The subpoena in this case was issued by the U.S. District Court for the Southern District of Florida, but calls for compliance in the Eastern District of New York. The laws protecting the documents that are sought are similar in the Second Circuit, Eleventh Circuit, state of New York, and state of Florida. The Court need not decide which law governs in order to grant Mr. Sullivan's motion. *Compare* N.Y. Civ. Rights Law § 79-h (McKinney), Fla. Stat. Ann. § 90.5015, and *Castleberry v. Camden Cty.*, No. 2:16-CV-128, 2019 WL 2106076, at *5 (S.D. Ga. May 14, 2019). *See also Gubarev v. BuzzFeed, Inc.*, No. 1:17-CV-60426, 2017 WL 6547898, at *2 (S.D. Fla. Dec. 21, 2017)(noting that "it is not necessary for the Court to engage in a choice of law analysis at this juncture" in addressing a motion to compel confidential documents under the reporters' privilege).

4

course of doing its job is not to be done lightly." *United States v. Grant*, No. 04 Cr. 207, 2004 U.S. Dist. LEXIS 28176, at *8-*9, 35 Media L. Rep. 2495 (S.D.N.Y. Nov. 18, 2004). The burden of overcoming privilege rests squarely on the party seeking disclosure. *Gonzales*, 194 F.3d at 36; *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987).

A court may not order a journalist to disclose confidential information unless the party seeking disclosure has made "a clear and specific showing that the information is: (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources." *Gonzales*, 194 F.3d at 31. Where non-confidential material is involved, disclosure shall not be compelled unless the party seeking disclosure establishes that the information sought is (1) "of likely relevance to a significant issue in the case" and (2) "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36. The party seeking disclosure must demonstrate a "particularized need" for the information sought, and that need should be balanced against the public interest in a free press, with disclosure compelled only where that public interest is outweighed. *Sikelianos v. City of New York (In re Subpoena Directed to the AP)*, No. 05 Civ. 7673, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008); *Grant*, 2004 U.S. Dist. LEXIS 28176, at *1, *6.

**B. The Subpoena Seeks Materials and Testimony That Are Protected by the Journalists' Privilege.**

The Subpoena broadly seeks production of communications between Mr. Sullivan and the defendant in the underlying litigation, Craig Wright; copies of unpublished materials, including copies of recordings, notes, or other records made of any interview or meeting with Craig Wright; and drafts of Mr. Sullivan's August 26, 2019 article regarding Craig Wright. *See* Sullivan Dec., Ex. B. The Subpoena also compels Mr. Sullivan's testimony regarding his interviews with Craig Wright. *Id.* The specific scope of the testimony to be elicited is not set forth in the subpoena. *Id.*

5

These types of communications, documents, and testimony fall squarely within the journalists' privilege, and requests to compel disclosure of such materials and information are routinely denied. *See In re NBC (Krase v. Graco Children Products, Inc.)*, 79 F.3d 346, 351 (2d Cir. 1996) (quashing subpoena seeking outtakes); *Giuffre*, 221 F. Supp. 3d at 477 (quashing subpoena seeking journalist's testimony and all documents reflecting communications with her sources); *Grant*, 2004 U.S. Dist. LEXIS 28176, at *9 (quashing subpoena for video outtakes of MTV program); *Carter v. City of New York*, No. 02 Civ. 8755, 2004 WL 193142, at *2, (S.D.N.Y. Feb. 2, 2004) (quashing subpoena for video of event and deposition testimony of reporter).

Because the materials and testimony clearly fall within the privilege, they are protected from disclosure unless Plaintiffs can show the information is "of likely relevance to a significant issue in the case" and "not reasonably obtainable from other available sources." As set forth below, they cannot do so.

### C. Plaintiffs Cannot Overcome the Journalists' Privilege.

To overcome the qualified privilege in this case, Plaintiffs must demonstrate that the materials and testimony sought are (1) "of likely relevance to a significant issue in the case" and (2) "not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 31. In doing so, Plaintiffs must demonstrate a "particularized need" for the information sought, and that need should be balanced against the public interest in a free press, with disclosure compelled only where that public interest is outweighed. *Sikelianos v. City of New York (In re Subpoena Directed to the AP)*, No. 05 Civ. 7673, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008); *Grant*, 2004 U.S. Dist. LEXIS 28176, at *1, *6.

Any possible relevance of the material sought must be balanced against the public interest in a free press. Where the public interest in a free press outweighs the Plaintiffs' interest in

6

obtaining the information, disclosure will not be compelled. *See, e.g., Grant*, 2004 U.S. Dist. LEXIS 28176 at *6 ("Applying the *Gonzales* standard to this case . . . requires balancing the likely relevance of the material sought and its availability from alternative sources against the public interest in a free press."). Plaintiffs have not articulated how Mr. Sullivan's newsgathering materials might be relevant to the underlying litigation, but based on the broad sweep of documents implicated in the subpoena, it is likely Plaintiffs themselves do not know how, if at all, the materials are relevant. Thus, Plaintiffs cannot meet their burden of showing the likely relevance of the materials and information to their case.

Furthermore, Plaintiffs cannot demonstrate that the materials they seek are not reasonably obtainable from other available sources. First and foremost, Plaintiffs can seek information regarding Craig Wright's statements from Craig Wright himself or from non-journalists with whom Craig Wright has spoken over the past six years. Plaintiffs can additionally seek information regarding Craig Wright's bitcoin ownership from Australian tax records or other financial records. Additionally, Plaintiffs can seek the same information contained in Mr. Sullivan's article from a video published on MetaNet TV containing a livestreamed interview with Craig Wright in which he makes statements similar to those reported by Mr. Sullivan – but with even more detail than reported by Mr. Sullivan.[3]

Additionally, Plaintiffs need only submit an affidavit from Mr. Sullivan authenticating a copy of his article and stating the copy "truly and accurately reflects the observations and facts contained therein," which is admissible in Florida courts in lieu of a journalist's deposition testimony regarding the same. *See McCarty v. Bankers Ins. Co., Inc.*, 195 F.R.D. 39, 27 Media L. Rep. 1051 (N.D. Fla. 1998) (citing F.S.A. § 90.5015 and referencing the self-authenticating articles

---

[3] This video is available on Meta TV's Website at https://metanet.id/livestream-august-2019-craig-wright/.

7

published by journalists). The Sullivan Declaration filed with this Motion meets these requirements.

Mr. Sullivan, a stranger to this suit, has no personal knowledge to impart that could assist this case. Instead, his testimony and records are being sought solely because Mr. Sullivan conducted an interview with Craig Wright, in which he discussed the bitcoin that he owned and controlled. Plaintiffs have no basis for seeking information from Mr. Sullivan aside from a desire to sift through Mr. Sullivan's newsgathering materials in the hopes of finding something relevant to their claims against Craig Wright – "precisely the type of excursion condemned" by this court. *See Lonegan v. Hasty*, No. CV04-2743(NG)(VVP), 2008 WL 41445, at *3 (E.D.N.Y. 2008).

The Subpoena is nothing more than a fishing expedition to try to determine if Mr. Sullivan has anything that could possibly aid the Plaintiffs' cause. Where, as here, the Plaintiffs do not even know what the material they seek contains, they cannot show, as they must, a "particularized need" for the information in Mr. Sullivan's possession. *Sikelianos*, No. 05 Civ. 7673, 2008 WL 2465120. Such "unfettered access" to "sift through" the materials sought is precisely what the privilege was intended to guard against. *Id.*; *Lonegan*, No. CV04-2743(NG)(VVP), 2008 WL 41445.

Compelling Mr. Sullivan to provide his communications, notes, and testimony under these circumstances would jeopardize the autonomy of the press, forcing journalists' like Mr. Sullivan to become professional witnesses and to chill their communications with sources – a result that New York federal and state courts have sought to avoid. *See, e.g. Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 477 (S.D.N.Y. 2016)("In recognizing that the First Amendment reporter's privilege also applies to non-confidential newsgathering information, the Second Circuit has explained that the reporter's privilege reflects 'broader concerns' beyond the confidentiality of a reporter's sources, noting that the privilege is designed to protect against the burdens that would accrue if it were to

become 'standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims.' The court explained further that those harms include 'burden[ing] the press with heavy costs of subpoena compliance,' increased requests for anonymity from sources anxious to avoid being 'sucked into litigation,' and 'the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.'")(internal citations omitted); *O'Neill v. Oakgrove Construction, Inc.*, 71 N.Y.2d at 526-27, 523 N.E.2d at 279, 528 N.Y.S.2d at 3. ("[A]utonomy" of the press" is jeopardized by "litigants seeking to utilize the newsgathering efforts of journalists for their private purposes.").

Given the available record, there is no basis for compelling the production of documents and testimony in this matter, and the Subpoena should be quashed in its entirety and non-party Brendan J. Sullivan should be awarded his costs and reasonable attorney's fees incurred in filing this motion to quash.

Respectfully submitted,

*[signature]*

Christine N. Walz
HOLLAND & KNIGHT LLP
31 West 52nd Street, 12th Floor
New York, NY 10019
212-513-3200
212-385-9010 (fax)
christine.walz@hklaw.com

S.D.Florida Counsel:
Judith M. Mercier
200 South Orange Avenue, Suite 2600
Orlando, Florida 32801
(407) 244-5151
(407) 244-5288 (fax)
judy.mercier@hklaw.com
*Counsel for Non-Party Brendan J. Sullivan*

9