**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IRA KLEIMAN, as the personal representative of the Estate of David Kleiman, and<br><br>W&K INFO DEFENSE RESEARCH, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>CRAIG WRIGHT,<br><br>    Defendant. | **Response in Opposition<br>to Motion to Quash**<br><br>Case No. 1:19-mc-02303-LDH |

In February 2018, Plaintiffs sued Craig Wright to recover billions of dollars in bitcoin he'd stolen from them. In August 2019, United States Magistrate Judge Bruce Reinhart found Craig had "intentionally submitted fraudulent documents to the Court, obstructed a judicial proceeding, and gave perjurious testimony." Judge Reinhart rejected Craig's claim that his bitcoin were locked in an encrypted file that he could not access and found that testimony to be perjurious. Judge Reinhart then entered severe sanctions against Craig, which resulted in Plaintiffs being deemed to have a present interest in billions of dollars of bitcoin Craig claimed to have mined (subject to some remaining affirmative defenses).

Craig walked out of the courthouse, stepped in the car, and got on a video call with Brendan Sullivan, a journalist. Craig did not request to speak off the record or otherwise request privacy. In that interview, which took place minutes after receipt of this sanction, Craig made numerous relevant admissions that go to liability and damages and which contradicted his testimony and pleadings in Florida. Specifically, he admitted that: (i) he *could* access his bitcoin; (ii) Dave Kleiman *was* his partner; (iii) Dave was part of the *Satoshi Nakamoto* partnership; (iii) Dave *invested* in the partnership; and (iv) Dave was entitled to *320,000* bitcoin.

1

Mr. Sullivan published a transcript of the interview. Plaintiffs sent a subpoena, which was subsequently narrowed in emails between counsel, to obtain admissible evidence of these highly relevant admissions. Inexplicably, Mr. Sullivan's motion fails to mention Plaintiffs immediate and aggressive narrowing of the subpoena.

At bottom, Mr. Sullivan's motion to quash should be denied because Plaintiffs' narrowed subpoena easily overcomes the qualified privilege for a journalist's non-confidential materials as it only targets (i) evidence that is highly relevant to significant issues in Plaintiffs' case that is (ii) not obtainable from any other source. Specifically, Plaintiffs' narrowed subpoena seeks only two things: (1) deposition testimony from Mr. Sullivan that Craig made the statements attributed to him in the article, and (2) a copy of any recording of the interview.

That's it. These demands are narrow, limited, and modest. Plaintiffs do not seek confidential information, confidential sources, or even truly non-public information. Enforcing the subpoena here does not amount to "wholesale exposure of press files" or "risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties."

What the Plaintiffs' subpoena does do is ensure they have admissible evidence of liability and damages at the upcoming trial against Craig. The qualified privilege for a journalist's non-confidential materials is easily overcome by Plaintiffs' need for relevant evidence, particularly given the extremely limited nature of the "intrusion" upon Mr. Sullivan.

The motion to quash should be denied.

**I.   Relevant law**

"Where a civil litigant seeks nonconfidential materials from a nonparty press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can show that the materials at issue are of likely relevance to a significant issue in

the case, and are not reasonably obtainable from other available sources." *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 36 (2d Cir. 1999).

Where "'the protection of confidential sources is not involved, the nature of the press interest protected by the privilege is narrower' and the privilege is 'more easily overcome.'" *United States v. Treacy*, 639 F.3d 32, 42 (2d Cir. 2011) (quoting *Gonzales*, 194 F.3d at 36).

## II. Plaintiffs' need for admissible evidence at trial is sufficient to overcome Mr. Sullivan's qualified privilege

As described below, Mr. Sullivan's deposition testimony and any recordings of the interview are "of likely relevance" to both liability and damages in Plaintiffs' case, and the evidence is "not reasonably obtainable" from any other source. *Gonzales*, 194 F.3d at 36. This is sufficient to overcome the qualified privilege for nonconfidential information.

### A. The statements attributed to Craig by Mr. Sullivan are highly relevant to liability and damages in Plaintiffs' case

Plaintiffs' subpoena concerns an interview where the defendant, Craig Wright, made a number of statements that amounted to admissions on both liability and the amount of damages owed Plaintiffs. As described below, Plaintiffs require Mr. Sullivan's deposition testimony and any recordings that might exist to ensure this evidence is admissible at trial.

#### 1. The Discovery Sanctions Order

On August 26, 2019, Magistrate Judge Reinhart granted Plaintiffs' motion to compel Craig Wright to produce a list of his bitcoin holdings because Craig "ha[d] not met his burden of proving by a preponderance of the evidence that he is unable to comply with the Court's Orders." ECF No. 277 at 13.

Judge Reinhart also imposed severe sanctions deeming certain facts established and striking affirmative defenses after finding Craig had "engaged in a willful and bad faith pattern of obstructive behavior" and had "intentionally submitted fraudulent documents to the Court,

3

obstructed a judicial proceeding, and gave perjurious testimony." ECF No. 277 at 27-28. Craig is currently appealing this order to Judge Bloom. ECF No. 310.

   2. *The Modern Consensus Article*

  The same day as the sanctions order, Mr. Sullivan published an article entitled *EXCLUSIVE: First interview with Craig Wright after judge orders him to pay $5 billion in bitcoin*.[1] The article quoted Craig as saying, among other things:

- I own a lot of BTC. **Dave should have owned 320,000** and I should have had 800,000 and now it's 50/50.

- Dave died, that was a worse day for me, because I lost a friend **and a partner.**

- The judge won't rule on whether I'm **Satoshi**. **But the partnership is. So when Dave Kleiman passed, the partnership transferred to Ira.**

- In response to Mr. Sullivan's statement that: "But how will you actually get the money? . . . **now you'll have to break the Tulip Trust** to transfer the coins." Craig responded with: "**If the court makes an order, I will comply with the order**. And the court has made an order. It's that simple."

- Not at least, just under half. Because **they'll have to come out of partnership. I spent more money on the project than Dave**, so I will rule on that and effectively Ira will get maybe 480,000 BTC.

- Everyone makes me look like a mean [expletive]. I might have been a [expletive], but I was the [expletive] who was withholding. **I could have tanked the market anytime in the last 10 years and ran away laughing.** I didn't.

- "But the judge ordered me to send just under 500,000 BTC over to Ira. Let's see what it does to the market. **I wouldn't have tanked the market. I'm nice**."

- "the kids are going to know that **we have the other $5 billion**"

- "**I sat on $10 billion** and didn't touch it."

---

[1] https://modernconsensus.com/cryptocurrencies/bitcoin/exclusive-interview-with-craig-wright-just-after-ordered-to-pay-5-billion-in-bitcoin/ (emphasis added).

- "You think I'm gonna complain because **I only get to keep $6 billion?**"

In other words, Craig admitted that: (i) he *could* access his bitcoin;[2] (ii) Dave Kleiman *was* his partner; (iii) Dave was part of the *Satoshi Nakamoto* partnership; (iii) Dave *invested* in the partnership; and (iv) Dave was entitled to *320,000* bitcoin (over $2.3 billion today). Furthermore, this means that the same day Craig was sanctioned for falsely claiming to be unable to access his bitcoin holdings, he told Mr. Sullivan that he'd always been able to access it. This constitutes an admission that is relevant, not only to liability, but also to Craig's pending objections to the magistrate judge's sanctions order. *See* ECF No. 311. Craig's identification of specific amounts of bitcoin owed to Plaintiffs or that he will be able to keep is also highly relevant to ascertaining damages owed due to his raiding of the partnership's property.

The statements attributed to Craig by Mr. Sullivan "goes to the heart of plaintiffs' theory of liability" and its case for damages. *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 242 (D.D.C. 2013).

B. <u>The motion to quash ignores Plaintiffs' narrowing of the subpoena</u>

Inexplicably, the description of the subpoena in the motion to quash ignores that Plaintiffs' immediately offered to significantly pare down its scope. The same day that Plaintiffs were contacted by counsel, they agreed to narrow the subpoena to only require Sullivan (1) appear for a deposition to confirm, under oath, that Craig Wright made the statements attributed to him in the interview, and (2) to provide a copy of any recording of the interview or a sworn statement that no such recording exists. Exhibit 1 (Email to C. Walz on Sep. 4, 2019).

---

[2] Craig's statements that he could tank the market mean that he would have done so by flooding the market with bitcoin – something he could only do if he could (contrary to his sworn testimony to Judge Reinhart) access his and Dave's bitcoin hoard.

Far from being a fishing expedition, Plaintiffs' subpoena presently seeks only these two simple and narrowly tailored categories of evidence, neither of which threatens to intrude on the freedom of the press or impose an undue burden on Mr. Sullivan. This subpoena would be resolved by a short deposition and the production of, at most, a single recording.

Instead of complying or allowing his counsel and the courts to resolve this matter professionally, Mr. Sullivan has made repeated public statements in an attempt to turn this process into a sideshow.[3] These statements call the true motive behind this motion to quash into question.

### C. Plaintiffs have a particularized need for Mr. Sullivan's testimony and any recordings of the interview with Craig Wright

  1. *Plaintiffs are entitled to any recordings as evidence to show Craig Wright made the statements attributed to him.*

If any recordings exist, Plaintiffs are entitled to them as the best evidence Craig actually made the statements attributed to him. Given that Sullivan has already published a transcript of the conversation, simply producing any recordings will hardly intrude on the journalistic process or expose any sources. "An audiotape is essentially a recording of what someone said. That it is also used in an article or story does not change that essential fact." *Mosely v. City of Chicago*, 252 F.R.D. 421, 434–35 (N.D. Ill. 2008)."

---

[3] For example, shortly after being served Mr. Sullivan tweeted stating that he had "interviewed Craig Wright for @ModernConsensus in front of several witnesses," and that he did not "owe anyone a copy of [his] confidential sources or recordings" but was sharing "a snippet." This snippet appears to be the subpoenaed video chat with Craig Wright but actually has the audio replaced by Rick Astley's "Never Gonna Give You Up." @mrbrendanjay, Twitter (Aug. 28, 2019), https://twitter.com/MrBrendanJay/status/1166818462318104576?s=20.

Another video Mr. Sullivan posted of himself indicated that he "really interview[ed] Craig Wright and [got] it all on tape." @mrbrendanjay, Twitter (Sep. 9, 2019), https://twitter.com/MrBrendanJay/status/1171202703407669249?s=20.

*See also* @mrbrendanjay, Twitter (Sep. 10, 2019) (asking counsel for Plaintiffs if they want to fight), https://twitter.com/MrBrendanJay/status/1171539589451763712?s=20.

See also @mrbrendanjay, Twitter Twitter (Sep. 10, 2019) (falsely claiming that "Velvel Freedman . . . threatened to send me to jail if I didn't sit for a deposition!") https://twitter.com/MrBrendanJay/status/1171582470661259264?s=20.

Concerns about chilling the flow of information between sources and journalists are also "weaker where, as here, a reporter's source agrees to openly participate in a recorded interview, with the understanding that portions of the interview will be broadcast." *Estate of Klieman v. Palestinian Auth.*, 293 F.R.D. 235, 243 (D.D.C. 2013).

> 2. *Mr. Sullivan's deposition testimony is necessary to ensure Plaintiffs can authenticate the Modern Consensus article at trial*

Plaintiffs' require Mr. Sullivan's deposition testimony to ensure they can authenticate the Modern Consensus article at trial. *See, e.g.*, *PPM Am., Inc. v. Marriott Corp.*, 152 F.R.D. 32, 35 (S.D.N.Y. 1993) ("In addition, in order to authenticate the partial transcript for use at trial, it may be necessary for Marriott to depose the person who made the tape recording from which the transcript was made.").

Mr. Sullivan argues that his deposition testimony is unnecessary because the Florida statute governing the journalist privilege provides that materials "may be authenticated for admission in evidence upon a showing, by affidavit of the professional journalist" that the document "is a true and accurate copy of the original, and that the copy truly and accurately reflects the observations and facts contained therein." Fla. Stat. Ann. § 90.5015(6). But it's not clear Mr. Sullivan's declaration will be sufficient for authentication because it's not clear that Florida statute has any effect in this case. Admissibility at trial will be governed by the Federal Rules of Evidence, not Florida's evidentiary rules, and the federal rules potentially foreclose using a sworn declaration to authenticate evidence. "Affidavits are ordinarily inadmissible at trials." *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171 (7th Cir. 1997).

> 3. *Mr. Sullivan's deposition testimony would help provide context and credibility to the Modern Consensus article*

Sullivan can "testify as to his general newsgathering practices, including whether he typically reports interviewees' statements verbatim." *Application of Bloomberg*, CIV. A. 97-227,

7

1998 WL 42252, at *2 (E.D. Pa. Jan. 8, 1998). These statements can help establish the accuracy and reliability of the statements reported.

### D. The evidence sought is not reasonably obtainable from other sources

There are only two possible sources of information relating to the interview: Mr. Sullivan and Craig Wright. As described below, Craig has refused to admit making the statements, which leaves Mr. Sullivan as the only available source of this evidence. Mr. Sullivan posits a number of "other available sources" but none can provide the information Plaintiffs' are seeking, namely the specific admissions Craig made to Sullivan in the interview for the Modern Consensus article. The "qualified privilege does not foreclose the issuance of compulsory process to journalists or excuse them from demonstrating, in an appropriate manner, that the privilege applies to particular documents or information in question. The word "journalist," in other words, is not an incantation that protects against the issuance of a subpoena." *In re Application of Chevron Corp.*, 736 F. Supp. 2d 773, 781 (S.D.N.Y. 2010).

#### 1. Craig Wright refuses to admit making the statements

In September 2019, Plaintiffs served a Request for Admission on Craig that asked him to admit he made the statements attributed to him by Mr. Sullivan in the Modern Consensus article.

On December 2, 2019, Craig responded by admitting to having participated in a Skype conversation with Mr. Sullivan but stating that it was "not possible for him to admit or deny each and every word attributed to him or that was said to him in a conversation, especially when it took place over three months ago during a brief Skype call with a bad connection—and to do so would be an act of futility." Exhibit 2 (Dec. 2, 2019 Response to RFA).

Without an admission from Craig, Mr. Sullivan is the only remaining source of evidence Plaintiffs can use to prove Craig made the statements in question. Craig's tendency to give "inconsistent" testimony only makes Plaintiffs' need for that evidence more acute.

8

### 2. Mr. Sullivan's suggested alternatives are not adequate substitutes

Sullivan suggests that there are other available sources for the information sought by the subpoena. But he is wrong.

The recording of the August 30, 2019 MetaNet TV livestream[4] is not an alternative source because in that interview Craig never acknowledges much of what he said to Sullivan, e.g., that Dave is owed 320,000 bitcoin, or that Craig has had the ability to access the bitcoin over the last 10 years. In fact, contrary to Mr. Sullivan's representation that the MetaNet video includes "statements similar to those reported by Mr. Sullivan," Mot. to Quash at 7, the MetaNet interview actually contradicts many of Craig's statements to Mr. Sullivan. For example, Craig claimed he has not been ordered to pay Plaintiffs at all, expressed the belief that he will be vindicated in a jury trial, and suggested that he could successfully evade any attempts to enforce the order against him:

> *There's no order to pay yet. It still has to go through a trial and all the rest. And just having an order from a magistrate is not enforceable in England anyways, and I'm not living in America and I have no assets in America.*[5]

\* \* \*

For those reasons, the motion to quash should be denied and Mr. Sullivan should be ordered to sit for a deposition and produce any recording that exists in a timely fashion.

---

[4] https://metanet.id/livestream-august-2019-craig-wright/.

[5] *Id.* at 36**:**30.

| | |
|---|---|
| Dated: December 9, 2019<br>Brooklyn, New York | Respectfully Submitted,<br><br>**ROCHE FREEDMAN LLP**<br><br>*/s/ Joseph M. Delich*<br><br>Joseph M. Delich<br>185 Wythe Ave F2<br>Brooklyn, NY 11249<br>jdelich@rochefreedman.com<br>t: (929) 457-0057<br><br>Velvel (Devin) Freedman<br>200 South Biscayne Blvd., Suite 5500<br>Miami, Florida 33131<br>vel@rochefreedman.com<br>t: (305) 357-3861<br><br>*Attorneys for Plaintiffs* |